IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA   )
                           )
v.                         )   CASE NO. CR422-115
                           )
OMAR LOCKHART,             )
                           )
    Defendant.             )
                           )

## O R D E R

Before the Court is Defendant Omar Lockhart's motion in limine (Doc. 25),[1] which the Government has opposed (Doc. 29). The Court held a hearing on the motion on July 6, 2023. (Doc. 53.) For the following reasons, Defendant's motion (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

On March 8, 2022, Defendant was arrested in connection with the robbery of the Synovus Bank on Paulsen Street in Savannah, Georgia. (Doc. 25 at 1; Doc. 25, Attach. 8 at 2.) On August 3, 2022, a federal indictment was filed against Defendant. (Doc. 1.) The indictment charges Defendant with one count of bank robbery in violation of 18 U.S.C. § 2113(a); one count of using, carrying, or

---

[1] Defendant's filing is titled "Memorandum in Opposition to Government's Notice of Intent to Introduce Other Act Evidence." (Doc. 25.) As the Magistrate Judge previously explained, the filing is more appropriately construed as a motion in limine because Defendant seeks affirmative relief that the Court rule evidence is inadmissible in this case. (Doc. 28 at 2.)

possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c); one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1); and one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(j). (Id.)

On August 4, 2022, the Government filed its Notice of Intent to Introduce Other Act Evidence. (Doc. 5.) Specifically, the Government explained that it intended to introduce evidence related to the April 9, 2020, theft of an automobile, financial transaction cards, and the firearm eventually used in the Synovus Bank robbery; the March 6, 2022, theft of an automobile that was used in the Synovus Bank robbery; and the March 7, 2022, switching of license plates on the automobile used in the Synovus Bank robbery and another automobile. (Id. at 2.)

I.  APRIL 2020 PRIOR ACTS

According to the Savannah Police Department's ("SPD") automobile theft crime report, on April 9, 2020, an individual reported that his automobile had been stolen from a hotel in Savannah with his 9 millimeter Taurus G2 pistol and financial transaction cards inside. (Doc. 25, Attach. 2 at 4.) The automobile was recovered, but the financial transaction cards and firearm were not. (Id.)

Later that morning, an individual attempted to use the stolen financial transaction cards at a gas station. (Id.) As described

2

in an SPD officer's supplemental report, the officer reviewed video surveillance footage from the gas station documenting the attempted use of the card and was "able to get several good pictures" of the suspect's face. (Doc. 25, Attach. 3 at 2.) The suspect "was possibly identified" as Defendant by other officers. (Id.)

On April 14, 2020, SPD officers arrested Defendant and charged him with financial transaction card fraud. (Doc. 25, Attach. 4 at 2; Doc. 25, Attach. 5 at 1.) Defendant was arrested on other charges in May 2020. (Doc. 25 at 3 (citing Doc. 25, Attach. 5 at 3).) After this arrest, Defendant "remained incarcerated for almost two full years – until late February 2022." (Id.)

II. MARCH 2022 ACTS

According to another automobile theft crime report by the SPD, on March 6, 2022, an individual reported that his red 2019 Chevrolet Spark, bearing a Georgia license plate and a Marine Corps decal on the lower passenger side rear windshield, was stolen from Domino's Pizza on Abercorn Street in Savannah where he worked as a delivery driver. (Doc. 25, Attach. 7 at 2.) An officer documented that he "was able to view security footage provided by convenience store in the same shopping complex[,]" and he "observed a black male, who appeared to be middle-aged, average weight and height wearing a yellow button-up long sleeve collard [sic] shirt, blue

3

jeans and a yellow beanie cap get into the drive[er] side of [the] vehicle . . . ." (Id.)

As described in the SPD's investigative narrative, on March 7, 2022, at 9:24 a.m., SPD officers responded to the Synovus Bank robbery. (Doc. 25, Attach. 8 at 3.) A detective "reviewed surveillance video from a nearby establishment. The suspect was observed entering the parking lot in a red in color Chevy Spark[,] and he observed there was a bumper sticker located on the back windshield of the Spark[.]" (Id.) The detective "was then notified that this vehicle matched the description of a stolen vehicle that was reported on March 6, 2022." (Id.) The detective also described the suspect as "wearing black pants and what appeared to be a white chef's jacket." (Id.)

The investigative narrative further described that officers located a white Kia Forte bearing the stolen red Chevrolet Spark's license plate later that day. (Id.) One of the automobile's occupants confirmed that the license plate did not belong on the automobile. (Id.) After the occupants explained they had been staying at a Super 8 Hotel on Canebrake Road, an officer dispatched to the Super 8 Hotel reviewed surveillance video showing "another male arriving at the hotel and switching the tag from the Chevy Spark with the Kia Forte." (Id. at 3-4.)

Officers later located the red Chevrolet Spark at the Clarion Pointe Hotel on Abercorn Street in Savannah. (Id. at 4.) Officers

4

then observed surveillance video of the automobile arriving at the hotel, the driver exiting the vehicle, and the driver entering the hotel, which captured the "face of the suspect." (Id.) Clarion Pointe Hotel staff informed officers that the "occupant resided in Room 315" and named Defendant as the occupant. (Doc. 25, Attach. 8 at 4.)

In the early morning hours of March 8, 2022, officers secured and executed a search warrant on Defendant's hotel room in an attempt to recover items from the Synovus Bank robbery. (Doc. 25, Attach. 6 at 1-3; Doc. 25, Attach. 8 at 4-5.) During the execution of the search warrant, officers discovered a firearm, which they determined was the same firearm from the April 2020 automobile theft, and a "Chevrolet Key fob," among other items. (Doc. 25, Attach. 6 at 3; Doc. 25, Attach. 8 at 5.)

Later that day, an investigator reviewed surveillance video recorded on March 7, 2022, before the robbery from a local convenience store. (Doc. 25, Attach. 8 at 5.) According to the SPD's investigative narrative, Defendant "was observed arriving to the location in the red Chevy Spark[,]" and he appeared to be wearing a chef's shirt, black jacket, black pants, and black shoes. (Id.)

After the Synovus Bank robbery, Defendant was charged with two counts of theft by receiving stolen property based on his alleged possession of the firearm from the April 2020 automobile

5

theft and the Chevrolet Spark. (Doc. 25 at 3-4; Doc. 25, Attach. 5 at 1.) While the financial transaction card fraud charge remains pending, Defendant asserts that he has never been charged with stealing the automobile from the April 2020 incident. (Doc. 25 at 3.) Likewise, Defendant asserts he was not charged with stealing the red Chevrolet Spark or participating in the license plate switch. (Id. at 4-5.)

Now, Defendant has filed his motion in limine asking the Court to prohibit the Government from introducing at trial evidence of Defendant's connection to the April 2020 automobile, financial transaction card, and firearm theft; the 2019 Chevrolet Spark theft; and the license plate switch. (Doc. 25 at 2.)

**LEGAL STANDARD**

"The Court will grant a motion in limine to exclude evidence only if the evidence in question is clearly inadmissible. The moving party has the burden of proving that the evidence sought to be excluded is inadmissible." United States v. Oury, 568 F. Supp. 3d 1380, 1389 (S.D. Ga. 2021) (quoting Wilson v. Pepsi Bottling Grp., Inc., 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009) (internal cites omitted)).

"The admissibility of evidence of uncharged conduct depends on whether the evidence is extrinsic or intrinsic to the charged offense." United States v. Shabazz, 887 F.3d 1204, 1216 (11th Cir. 2018). Intrinsic evidence falls outside the scope of Federal Rule

of Evidence 404(b) and is admissible "[i]f the evidence is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offenses, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offenses,' " and "satisfies the requirements of Rule 403[,]" discussed below. Id. As the Eleventh Circuit explained in more detail,

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998). "Evidence is 'inextricably intertwined' with the evidence of the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.' " United States v. Joseph, 978 F.3d 1251, 1263 (11th Cir. 2020) (quotation omitted). Eleventh Circuit "precedent does not demand that intrinsic evidence establish an element of a charged offense." Shabazz, 887 F.3d at 1217.

"On the other hand, if the evidence is extrinsic, then Rule 404(b) prohibits its admission unless the evidence is offered for some purpose other than proving the defendant's character 'to show

that on a particular occasion [he] acted in accordance with th[at] character.' " Id. at 1216 (citing Fed. R. Evid. 404(b)(1)).

> [The Eleventh Circuit] recognize[s] a three-part test to determine if evidence is admissible under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof that a jury could find by a preponderance of the evidence that the defendant committed the act; and (3) the probative value of the evidence must not be substantially outweighed by undue prejudice, as established in Fed. R. Evid. 403 ("Rule 403").

United States v. Lamb, 831 F. App'x 938, 939 (11th Cir. 2020) (per curiam) (citation omitted). "The principles governing Rule 404(b) evidence are the same whether the conduct occurs before or after the charged offense." Id. (citation omitted).

As for an issue other than defendant's character, "[s]uch evidence 'may, [] be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' " United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007). "The standard for establishing identity is particularly stringent. [The Eleventh Circuit has] held that when 404(b) evidence is introduced for identity, the similarities between the two offenses must demonstrate modus operandi or the handiwork of the accused." Lamb, 831 F. App'x at 939 (internal citation omitted).

> In deciding whether the prosecution has introduced sufficient evidence to make its showing that the defendant engaged in the prior act, the trial court need not make a finding to that effect, but instead it "simply

8

> examines all the evidence in the case and decides whether the jury could reasonably find the . . . fact [at issue] by a preponderance of the evidence."

Oury, 568 F. Supp. 3d at 1389 (quoting United States v. Green, 873 F.3d 846, 858 n.9 (11th Cir. 2017)). Finally, "[i]n assessing the probative value of the extrinsic evidence . . . , we evaluate the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt, 'the overall similarity of the extrinsic and the charged offenses and the closeness or remoteness in time of the charged to the extrinsic offense.' " United States v. Carty, No. 5:17-CR-26 (MTT), 2018 WL 2386061, at *3 (M.D. Ga. May 25, 2018).

As mentioned above, whether offered as intrinsic evidence or extrinsic evidence, a court must also find that the evidence satisfies the requirements of Federal Rule of Evidence 403. Meaning, the Court must find that the probative value of the proffered evidence is not substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. Unfair prejudice can be mitigated by limiting instructions from the court. United States v. Diaz-Lizaraza, 981 F.2d 1216, 1225 (11th Cir. 1993).

With this standard in mind, the Court now addresses each challenged category of evidence in turn.

## ANALYSIS

The Government argues the evidence of these acts is "necessary to tell the story of how [Defendant] committed the crimes[,]" and

9

is "inextricably intertwined" with the evidence regarding the charged offenses. (Doc. 5 at 1.) While the Government contends it only provided notice "out of an abundance of caution[,]" it maintains that these acts show preparation, plan, and identity under Rule 404(b). (Id. at 2, 3.) Specifically, the Government believes

> the 2020 car theft and gun theft identif[y] [Defendant] and show[] how he came into possession of the stolen gun that he used in the robbery. The March 6, 2022, car theft shows how [Defendant] came into possession of the car that he used in the robbery. And the video of him swapping license plates from the stole[n] car with another car, shows his attempt to avoid capture.

(Id. at 3.)

Defendant argues the acts identified by the Government should be excluded. (Doc. 25.) First, Defendant argues the April 2020 allegations regarding the automobile theft and firearm theft are too remote in time to be intrinsic, particularly when considering that Defendant was incarcerated from May 2020 through February 2022. (Id. at 6, 7.) Defendant also contends the April 2020 allegations are not admissible as extrinsic evidence pursuant to Rule 404(b) because they do not prove plan or preparation due to the remoteness in time, and the Government lacks sufficient proof that Defendant committed these acts. (Id. at 7.) As for the March 2022 automobile theft and license plate switch, Defendant does not advance a distinct argument as to why these acts are not admissible intrinsic or extrinsic evidence. (Id. at 8.) However, Defendant

10

generally maintains these acts are not admissible because the Government lacks sufficient proof that Defendant committed these acts. (Id.) Overall, Defendant argues none of the acts are admissible as extrinsic evidence to prove Defendant's identity because there is no similarity between the offenses, and Rule 403 balancing prohibits their introduction. (Id. at 6, 8.)

In reply, the Government maintains that the 2020 automobile and firearm theft is intrinsic evidence because it is directly relevant to proving the elements of two of the charged offenses, possession of a firearm by a prohibited person and possession of a stolen firearm, and the firearm was used in the other charged offenses, bank robbery and using, carrying, or possessing a firearm during and in relation to a crime of violence. (Doc. 29 at 2.) Regarding Defendant's argument that insufficient evidence exists to find Defendant committed the acts and admit the evidence pursuant to Rule 404(b), the Government contends "[D]efendant was identified as the 2020 car thief when he attempted to use the auto-theft victim's credit cards at a convenience store." (Id.) As for the March 2022 automobile theft and license plate switch, the Government argues this evidence is proof Defendant committed the charged bank robbery. (Id. at 2-3.) Specifically, the Government contends Defendant used the stolen car to drive to and from the Synovus Bank robbery and switched the plates to avoid capture.

11

(Id. at 3.) Defendant was then later found with this same car parked outside of his hotel. (Id.)

I. APRIL 2020 PRIOR ACTS

The Court concludes evidence related to the April 2020 automobile, financial transaction card, and firearm theft is neither intrinsic to the charged offenses nor admissible as extrinsic evidence under Rule 404(b). These acts, which occurred approximately two years before the Synovus Bank robbery, are not part of the same transaction or series of transactions of the charged offenses. Certainly, nothing about the automobile or financial transaction card theft is necessary to complete the story of the Synovus Bank robbery or related firearm charges. And although a closer call, the Government can still "complete the story" of the possession of a firearm by a prohibited person and possession of a stolen firearm charges without allegations regarding Defendant's alleged theft of the automobile containing the firearm. Finally, an account of the April 2020 automobile, financial transaction card, and firearm theft are not an "integral and natural part of the witness's accounts of the circumstances surrounding" the Synovus Bank robbery. Joseph, 978 F.3d at 1263. Consequently, the April 2020 acts cannot be considered inextricably intertwined with the charged offenses and may not be admitted as intrinsic evidence at trial.

The Court is also not convinced that these prior acts are admissible as extrinsic evidence under Rule 404(b). First, the evidence is not relevant to the Government's proffered non-propensity purposes. The Government generally argues that the evidence is being offered to show preparation, plan, and identity. (Doc. 5 at 1.) More specifically, the Government maintains "the 2020 car theft and gun theft identif[y] [Defendant] and show[] how he came into possession of the stolen gun that he used in the robbery." (Id.) The Court agrees with Defendant that the Government has not satisfied the "particularly stringent" standard for introducing the evidence for identity. Lamb, 831 F. App'x at 939. The offenses – the April 2020 theft of an automobile, financial transaction cards, and firearm – are not similar to the bank robbery charges, and they do not demonstrate "the modus operandi or the handiwork of the accused." Id. Further, the April 2020 prior acts do not show preparation for or part of a larger plan to commit a bank robbery or the related firearm charges years later, particularly when considering Defendant was incarcerated for a large portion of this time.

Second, in the Court's view, there is not sufficient proof to enable a jury to find by a preponderance of the evidence that Defendant committed the acts in question. In support of its argument that there is sufficient evidence to conclude Defendant committed the April 2020 automobile and firearm theft, the

13

Government contends "[D]efendant was identified as the 2020 car thief when he attempted to use the auto-theft victim's credit cards at a convenience store." (Doc. 29 at 2.) This says nothing directly about Defendant's connection to the automobile or firearm theft. Without further support, this evidentiary leap is a bridge too far for the Court to conclude a sufficient basis exists for the jury to find that Defendant was the actor. Oury, 568 F. Supp. 3d at 1389.

Finally, the Rule 403 analysis indicates that this evidence should be excluded. Considering "the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt, 'the overall similarity of the extrinsic and the charged offenses and the closeness or remoteness in time of the charged to the extrinsic offense[,]' " Carty, 2018 WL 2386061, at *3, the Court concludes the probative value of the evidence is substantially outweighed by the danger of undue prejudice. The Government's need for evidence that Defendant allegedly stole an automobile, financial transaction cards, and a firearm in 2020 to prove Defendant committed the Synovus bank robbery, used a firearm during the robbery, was a felon in possession of a firearm, and possessed a stolen firearm is low. Additionally, although a two-year span is not always a prejudicial amount of time, there is not temporal proximity, weighing against admittance, and in this case, the offenses are not similar. Cf. Oury, 568 F. Supp. 3d at 1390

14

("However, 'given the high degree of similarity between [the prior acts and the charged conduct], the temporal separation of the two does not significantly depreciate the probative value of the [prior proceedings].'"). Accordingly, to the extent Defendant seeks to exclude evidence about the April 2020 prior acts, Defendant's motion is **GRANTED IN PART**.

## II.   MARCH 2022 ACTS

Conversely, the Court concludes evidence related to the March 6, 2022, theft of the red Chevrolet Spark and March 7, 2022, license plate switch is appropriately categorized as intrinsic evidence. Moreover, the probative value of the evidence is not substantially outweighed by a danger of unfair prejudice.

The indictment alleges that Defendant robbed the Synovus Bank on Paulsen Street. (Doc. 1 at 1-2.) As described in the SPD's investigative narrative, a detective reviewed surveillance video from a nearby establishment, noted that "the suspect was observed entering the parking lot in a red in color Chevy Spark" with "a bumper sticker located on the back windshield[,]" and learned the "vehicle matched the description of a stolen vehicle that was reported on March 6, 2022." (Doc. 25, Attach. 8 at 3.) From there, the chronicle of locating the automobile and suspect unfolded, which included officers reviewing surveillance video at the Super 8 Hotel showing "another male arriving at the hotel and switching the tag from the Chevy Spark with the Kia Forte." (Id. at 4.)

15

The March 2022 automobile theft and license plate switch, which both occurred within hours of the charged crimes, are necessary for the Government to be able to tell the full story of the crime. The theft of the Chevrolet Spark suggests how the suspect obtained the automobile used as the getaway car that facilitated the Synovus Bank robbery at issue in the case, and it can reasonably be assumed that the license plate switch was done to avoid capture and arrest for the robbery.

Beyond this, this evidence is inextricably intertwined with the indicted conduct. How officers identified this specific red Chevrolet Spark and the steps required to locate the car and the robbery suspect are an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." Joseph, 978 F.3d at 1263.

Having concluded that the March 2022 automobile theft and license place switch qualify as intrinsic evidence, it is unnecessary for the Court to offer an opinion as to the admissibility of the evidence under the alternative theory of Rule 404(b). Accordingly, to the extent Defendant seeks to exclude evidence about the March 2022 automobile theft and license plate switch, Defendant's motion is **DENIED IN PART**.

## CONCLUSION

Accordingly, Defendant's motion in limine (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**.

SO ORDERED this 24th day of July 2023.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA